IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:11-cr-113 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| ITOHAN AGHO-ALLEN | : | |
| aka ITOHAN ALLEN, | : | |
| PRINCE EDOSA | : | |
| aka KINGSLEY ORJI, | : | |
| CHIKELOS EJIKEME | : | |
| aka CHIKELO EJIKEME, | : | **FILED** |
| CHRISTIAN EJIOFOR, | : | **HARRISBURG** |
| CHUKWUEMEKA NWAKANMA, | : | |
| IKEJIANI OKOLOUBU, | : | FEB 29 2012 |
| CHRISTIAN OKONKWO, | : | |
| SUSAN OSAGIEDE, and | : | MARY E. D'ANDREA, CLERK |
| ELVIS UADIALE | : | Per_____ |
| | | DEPUTY CLERK |

## SUPERSEDING INDICTMENT

### COUNT 1
#### (Conspiracy to Commit Mail Fraud, Wire Fraud and Money Laundering)

A. Background

Beginning in or around 2002 and continuing through November 2010, domestic and foreign based mass marketers, both known and unknown to the Grand Jury, instructed victims to send Western Union and MoneyGram money transfers to satisfy advance fee conditions associated with falsely promised lucrative financial awards and offers, or to purchase various products offered for sale via the internet.  Some of the mass marketing schemes included the manufacture, distribution and negotiation of counterfeit checks.  The mass marketers used fictitious names, titles, companies, and addresses when they communicated with victims, and instructed the victims to send the Western Union and MoneyGram money transfers payable to fictitious name payees.  The

defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE**, each former Western Union and MoneyGram agents, and the defendant **CHIKELOS EJIKEME,** a former MoneyGram agent, and other agents known and unknown to the Grand Jury, processed and cashed the victim money transfers in a manner which maintained the anonymity of the mass marketers, and concealed the control and ownership of the fraudulent proceeds. The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE** kept a portion of the fraud induced proceeds as compensation for their role in the conspiracy.

The defendants **CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA and CHRISTIAN OKONKWO**, as either middleman or mass marketers, presented the money transfer transactions to defendants **AGHO-ALLEN, EDOSA, OKOLOUBU, OSAGIEDE and UADIALE,** and other agents known and unknown to the grand jury, in order to convert the money transfers to cash.  **EJIKEME, EJIOFOR, NWAKANMA and OKONKWO**, on occasion as middleman, acted on behalf of other mass marketers that needed the services of complicit agents.  **EJIKEME, EJIOFOR, NWAKANMA and OKONKWO** recruited various Western Union and MoneyGram agents to process the fraud induced money transfers, and in most instances directed the agents to re-transfer the monies to co-conspirators known and unknown to the Grand Jury.  **EJIKEME, EJIOFOR, NWAKANMA and OKONKWO** dictated the false payee and sender biographical information and identification data to be entered into the MoneyGram and Western Union data bases by the complicit agents.  **EJIKEME, EJIOFOR, NWAKANMA and OKONKWO** distributed the fraud induced money transfer processing activity among the defendants **AGHO-ALLEN, EDOSA, OKOLOUBU, OSAGIEDE and UADIALE,** and other agents known and unknown to the grand jury.

As used in this Superseding Indictment, the term "mass marketer" or "mass marketers" refers to an individual, or group of individuals, who use one or more means of mass communication media, to include the mail, telephone and internet, to distribute fraudulent sweepstakes, loan, employment opportunity and other lucrative financial awards and offers.

The mass marketing schemes included, but were not limited to the following:

SWEEPSTAKES SCHEMES

- Advance fee sweepstakes schemes wherein purported "winners" were directed to pre-pay processing fees and taxes in order to collect their cash prizes. The Western Union and MoneyGram payees were falsely identified as representatives of public or private sweepstakes organizations or taxing authorities. As used in this Indictment, the term "winner" refers to an individual who received a fraudulent prize notification and counterfeit check.

LOAN SCHEMES

- Advance fee loan fraud schemes wherein purported successful loan applicants were directed to pay advance fees to purchase insurance or to place security deposits in order to receive guaranteed loan proceeds. The Western Union and MoneyGram payees were falsely identified as representatives of the purported lenders. As used in this Indictment, the term "borrower" refers to an individual who was falsely promised a loan.

EMPLOYMENT OPPORTUNITY SCHEMES

- Employment Opportunity schemes wherein job seekers were directed to cash checks and use the proceeds to complete purchases, Western Union and MoneyGram money transfers to evaluate retail stores, Western Union and MoneyGram. The victims, sometimes referred to as "secret shoppers", were directed to retain a portion of the cash proceeds as payment for their services. As

used in this Indictment, the term "secret shopper" refers to an individual who was recruited via the mail to cash checks and send Western Union and MoneyGram money transfers on behalf of purported quality control consultants.

PERSON IN NEED SCHEMES

- Person in Need schemes wherein mass marketers developed an on-line relationship with intended victims or posed as a relative, typically a grandchild, in order to induce the intended victims to send Western Union or MoneyGram money transfers for a false need or emergency.

INTERNET PURCHASE SCHEMES

- Internet purchase schemes wherein mass marketers posed as the sellers of large ticket items, in most instances at a lucrative price. The mass marketers directed the purchasers to send Western Union or MoneyGram money transfers as payment for the items, in some instances payable to third parties that reportedly would guarantee delivery of the items. The products were never delivered.

Domestic and foreign based mass marketers distributed the fraudulent prize notifications and employment opportunities accompanied by checks via Canada Post and the United States mail. The advance fee loan fraud offers were routinely distributed via the internet. Telemarketers falsely authenticated the prize notifications, employment opportunities, and loan offers. Telemarketers directed the recipients to cash the checks to fund the pre-payment of fees which were reportedly a condition of prize delivery, or to complete retail purchases and send Western Union and MoneyGram money transfers in order to evaluate the respective businesses pursuant to the employment opportunity schemes. The checks cashed by the purported "winners" and "secret shoppers", hereinafter victims, were counterfeit, and returned unpaid to the banks of first deposit. The banks of first deposit initiated collection procedures against the victims for the total value of the counterfeit checks. The advance fee loan schemes did not ordinarily include the delivery of a check to the intended victim. As a condition of loan issuance, loan fraud victims were instructed to use personal funds to send Western Union and

MoneyGram money transfers to complete collateral and insurance payments. The prize notifications, employment opportunities and loan offers were fictitious and the claimed association with legitimate public and private sweepstakes or lottery organizations, customer service evaluation businesses and lenders was false.

As used in this Superseding Indictment, the term "complicit agent" describes a Western Union or MoneyGram agent who permitted mass marketers, in some instances through a middleman, to cash fraud induced Western Union and MoneyGram money transfers payable to multiple fictitious names. The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE**, and other "complicit agents", entered false names and identification data into the Western Union and MoneyGram computer data bases to conceal the true identity of the mass marketers from the victims, law enforcement and regulatory agencies. The mass marketers, middlemen and "complicit agents" used thousands of different payee names in order to avoid detection and the scrutiny of anti-money laundering protocols.

The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE** converted the fraud induced Western Union and MoneyGram money transfers to cash or a combination of cash, money orders, checks, bank wires and money transfers on behalf of the co-conspirator mass marketers and middlemen. The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE,** and similarly complicit Western Union and MoneyGram Agents, known and unknown to the Grand Jury, entered false payee identification and biographical data into the Western Union and MoneyGram transactional data bases. In so doing, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE** concealed the identity of the fraudulent mass marketers and middlemen and the control and ownership of the fraudulent proceeds from the victims, Western Union, MoneyGram, United States Treasury and law enforcement officials.

At all times pertinent to this Superseding Indictment:

1. Western Union and MoneyGram were publicly traded global money transfer companies. The Western Union and MoneyGram networks consisted of over 500,000 Agents, sometimes referred to as outlets, worldwide. Typical Western Union and MoneyGram money transfers are sent among (to and from) family members and close acquaintances. The average dollar amount of a typical North American Western Union and MoneyGram money transfer approximates $400. The average dollar amount of a typical fraud induced money transfer cashed by a complicit agent pursuant to mass marketing sweepstakes and secret shopper schemes approximates $2,000. Only a fraction, estimated between ten to twenty five percent, of the victims reported the fraud induced money transfers to Western Union and MoneyGram.

2. Western Union and MoneyGram money transfer senders were required to present cash and complete a handwritten application, known as a "To Send Money" (Western Union) or "Send" (MoneyGram) form at an authorized Western Union or MoneyGram Agent location. The senders were required to list the amount of the transfers, the names of the payees (receivers), the expected payout locations, and their own names, telephone numbers and addresses on the "To Send Money" and "Send" forms. The Western Union and MoneyGram Agents collected the money transfer amounts, plus money transfer fees from the senders, and entered the senders' biographical and identification data, along with the names of the intended payees into the Western Union and MoneyGram transactional data bases. Western Union assigned 10 digit Money Transfer Control Numbers (MTCNs) and MoneyGram assigned 8 digit Reference Numbers to the transactions.

3. Western Union and MoneyGram payees were required to physically enter authorized Western Union and MoneyGram Agent locations (outlets) and complete handwritten applications, known as a "To Receive Money" (Western

Union) and "Receive" (MoneyGram) forms. The payees were directed to list their own addresses and telephone numbers, and the name, city and state of the senders and the expected money transfer amounts on the "To Receive Money" and "Receive" forms. It was optional for the payees to list the 10 digit MTCN and 8 digit Reference Numbers. The payees presented the completed "To Receive Money" and "Receive" forms to the Western Union and MoneyGram Agents. The Western Union and MoneyGram Agents were then required to query the Western Union or MoneyGram transactional data bases to determine whether the money transfers had been sent by the senders identified by the payees. For all money transfers in an amount equal to or greater than $1,000 (Western Union) or $900 (MoneyGram) the payees were required to present valid identification documents for examination by the Western Union and MoneyGram Agents. The Western Union and MoneyGram Agents were required to enter the payee names, addresses, telephone numbers, and identification document serial numbers into the Western Union and MoneyGram transactional data bases.

4.  Regardless of the expected city and state listed by MoneyGram and Western Union money transfers senders, the money transfers pertinent to this Superseding Indictment were converted to cash, checks, money orders, bank wires or re-transferred in the Greater Newark, NJ, Brooklyn, New York, Atlanta, Georgia, Houston, Texas and Montreal, Quebec Areas by the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE, ELVIS UADIALE,** and other complicit money service business agents known and unknown to the grand jury. A substantial portion of those monies were re-transferred by the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, IKEJIANI OKOLOUBU, SUSAN OSAGIEDE and ELVIS UADIALE**, and others, to Canada and West Africa in the form of money transfers and bank wires. The defendants kept or shared an approximate 15% to 20% cut of the fraud induced money transfers for their role in the conspiracy.

5.  Beginning in or about May 2003 through April 2005, the defendant **IKEJIANI OKOLOUBU**, a Nigerian born resident of Montreal, Canada, operated a Western Union outlet named First Cone in the Greater Montreal, Quebec area.  During the period August 2003 through March 2005, Western Union senders reported that 80 money transfers totaling $175,211 paid at First Cone were induced by fraudulent mass marketing activity.  Western Union suspended **OKOLOUBU's** authority to process Western Union money transfers during April 2005 due to **OKOLOUBU's** apparent complicity in mass marketing fraud and money laundering activity.  In or about May 2005, **OKOLOUBU** applied for and was awarded an agency agreement to process MoneyGram money transfers.  During the period November 2005 through June 2008, MoneyGram senders reported that 102 money transfers totaling $272,136 paid at First Cone were induced by fraudulent mass marketing activity.  In or about December 2005, an unindicted co-conspirator and reported wife of **IKEJIANI OKOLOUBU** was awarded a Western Union Canada Agency Agreement in the name Depanneur Ice.  **CHRISTIAN OKONKWO** witnessed the unindicted co-conspirator's signature on the Western Union Personal Indemnity and Guarantee.  **OKOLOUBU** deposited money transfer checks issued by Depanneur Ice and First Cone pursuant to fraud induced money transfers into a bank account in the name Ikejiani Transport.  During the period March 2006 through January 2007, Western Union senders reported that eight (8) money transfers totaling $21,591 paid at Depanneur Ice were induced by fraudulent mass marketing activity.

6.  During 2006, **OKOLOUBU** and an unindicted co-conspirator MoneyGram agent trading as Empech Global agreed to process fraud induced money transfers on behalf of various middleman and mass marketers, to include defendants **CHIKELOS EJIKEME, CHUKWUEMEKA NWAKANMA and CHRISTIAN OKONKWO.  OKOLOUBU,** the unindicted co-conspirator trading as Empech Global and the defendant **CHRISTIAN EJIOFOR** agreed to recruit MoneyGram and Western Union agents in the United States to process fraud induced money transfers and re-transfer the proceeds to **OKOLOUBU**, Empech Global and the

unindicted co-conspirator and mass marketers in Canada and West Africa.

7.   Unindicted co-conspirators Abbey One Stop, IV Beauty Supply and RM & E were among the MoneyGram and Western Union agents recruited by the defendant **CHRISTIAN EJIOFOR**.   **EJIOFOR** directed the unindicted co-conspirators to process the fraud induced money transfers, and to enter false payee data into the MoneyGram and Western Union computer data bases.   **EJIOFOR** likewise directed the unindicted co-conspirator agents to re-transfer the fraud proceeds to Canada and West Africa via money transfers and bank wires which concealed the identity of the fraudulent mass marketers and the source, ownership and control of the fraud proceeds.   The defendant **EJIOFOR** shared approximately 15% of the processed fraud proceeds with the unindicted co-conspirator agents.

8.   The co-conspirator United States agents, to include the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA and SUSAN OSAGIEDE**, sent MoneyGram money transfers totaling approximately three million dollars from the United States which were processed by the defendant **OKOLOUBU,** as First Cone, and Empech Global in Canada.   MoneyGram money transfer senders reported that 4,790 money transfers, totaling approximately $14 million, processed by the 36 co-conspirator United States agents were fraud induced.   In or about December 2008, MoneyGram terminated **OKOLOUBU's** contract to process MoneyGram money transfers due, in part, to **OKOLOUBU's** apparent complicity in mass marketing fraud and money laundering activity.   Also, during this same time period, the defendants **EDOSA and OSAGIEDE** converted the proceeds of fraud induced money transfers processed in Brooklyn, NY to checks payable to Ikejiani Transport and mailed the checks to **OKOLOUBU** in Montreal, Canada.

9.   Beginning in or about 2004, the defendant **CHIKELOS EJIKEME**, a West African born resident of Montreal, Canada, participated in the mass marketing fraud, counterfeit check and money laundering activity described herein.   **EJIKEME** collected the proceeds of this activity at various Greater Montreal Area

MoneyGram and Western Union outlets to include those operated by co-defendant **OKOLOUBU** and Empech Global. In or about October 2005, **EJIKEME** applied for and was awarded an agency agreement to process MoneyGram money transfers in the name Ligne Atlas Cargo. During the period December 2005 through August 2006, MoneyGram senders reported that 25 money transfers totaling $72,703 paid at Ligne Atlas Cargo were induced by fraudulent mass marketing activity. In or about August 2006, MoneyGram terminated **EJIKEME's** contract to process MoneyGram money transfers due, in part, to **EJIKEME's** apparent complicity in mass marketing fraud and money laundering activity.

10. Beginning in or about 2006, the defendant **CHUKWUEMEKA NWAKANMA**, a West African born resident of Montreal, Canada, participated in the mass marketing fraud, counterfeit check and money laundering activity described herein. **CHUKWUEMEKA NWAKANMA** collected the proceeds of this activity at various Greater Montreal Area MoneyGram and Western Union outlets to include those operated by co-defendant **OKOLOUBU** and Empech Global. Some of the money transfers processed for **NWAKANMA** at **OKOLOUBU's** outlet were sent from outlets operated by the defendant **PRINCE EDOSA** and an unindicted co-conspirator agent recruited by **EDOSA**.

11. Beginning in or about 2007, the defendant **CHRISTIAN OKONKWO**, a West African born resident of Montreal, Canada, participated in the mass marketing fraud, counterfeit check and money laundering activity described herein. **OKONKWO** collected the proceeds of this activity at various Greater Montreal Area MoneyGram and Western Union outlets to include those operated by **OKOLOUBU** and Empech Global. **OKOLOUBU** and Empech Global issued numerous MoneyGram money transfer checks payable to **CHRISTIAN OKONKWO** instead of the fictitious name payee reported to victims and MoneyGram. Some of the money transfers processed for **OKONKWO** at **OKOLOUBU's** outlet were sent from outlets operated by the defendant **PRINCE**

EDOSA and an unindicted co-conspirator agent recruited by **EDOSA**.  Also, during this same time period, the defendants **ITOHAN AGHO-ALLEN, PRICE EDOSA and SUSAN OSAGIEDE** converted the proceeds of fraud induced money transfers processed in Brooklyn, NY, to checks payable to **CHRISTIAN OKONKWO** and mailed the checks to **OKONKWO** in Montreal, Canada.

12. At various times during the period 2002 through 2009, **PRINCE EDOSA** and **SUSAN OSAGIEDE**, reported husband and wife, co-owned and operated Western Union and MoneyGram outlets in Brooklyn, New York under the trade name A & M Communications.  In or about May 2005, Western Union terminated A & M Communication's authorization to process Western Union money transfers at the request of its Security and Compliance Departments due in part to the high number of fraud induced money transfers processed at A & M Communications. During a five month period in 2004, alone, 59 Western Union money transfers, totaling $262,640, processed at A & M Communications were reported by the senders as fraud induced.  In or about this same time, **OSAGIEDE** and **EDOSA** were granted authority to process MoneyGram money transfers in the name A & M Communications at three locations in Brooklyn, New York.  Each outlet was reportedly co-owned by **SUSAN OSAGIEDE** and **PRINCE EDOSA**.  **OSAGIEDE** and **EDOSA** were authorized to operate a fourth MoneyGram outlet in the name Gosa Links at 5010 Avenue D, Brooklyn, New York.

13. In or about June 2006, at the request of **SUSAN OSAGIEDE**, an unindicted co-conspirator applied for a Western Union outlet with co-defendant **PRINCE EDOSA** in the name Gosa Multiservices.  The unindicted co-conspirator falsely listed herself as the 50% co-owner of Gosa Multiservices.  **PRINCE EDOSA**, a previously terminated Western Union agent, falsely identified himself to Western Union as **Kingsley Orji**, co-owner with the unindicted co-conspirator.

14. In or about December 2006, an unindicted co-conspirator, the purported 50% owner of Gosa Multiservices described in the previous paragraph, applied for and was awarded a Western Union Agency Agreement in the name Star Multiservices.  In or about May 2007, the unindicted co-conspirator applied for and was awarded a MoneyGram agency agreement in the name Star Multiservices.

15. During the period June 2004 through May 2007, 31 MoneyGram money transfers totaling $91,121 processed at Gosa Links were reported as fraud induced.   In or about April 2007, **SUSAN OSAGIEDE** reported to MoneyGram that she sold the Gosa Links operation to the defendant **ITOHAN AGHO – ALLEN**, and recommended to MoneyGram that they award an agency agreement to **AGHO – ALLEN**.   On or about April 6 2007, **ITOHAN AGHO – ALLEN** applied for a MoneyGram agency agreement in the name Miracle Multi Link at 5010 Avenue D, Brooklyn, NY.

16. In or about September 2007, the defendant **PRINCE EDOSA**, identifying himself as **Kingsley Orji**, advised Western Union that he obtained sole ownership of Gosa Multiservices.   During the period May 2007 through January 2008, 30 money transfers, totaling $76,571, processed at Gosa Multiservices were reported by the senders as fraud induced.  During the period May 2007 through October 2008, 55 Western Union money transfers, totaling $159,804, processed at Star Multiservices were reported by the senders as fraud induced.  Western Union terminated the Gosa Multiservices (**PRINCE EDOSA** as **Kingsley Orji**) and Star Multiservices agency agreements when they learned of the association among **EDOSA aka Orji, OSAGIEDE**, and Star Multiservices, and the apparent falsity of the data entered into the Western Union computer system at Gosa Multiservices and Star Multiservices.

17. Beginning in or about May 2008 through January 2009, the defendant **ELVIS UADIALE** sometimes simultaneously operated MoneyGram and Western Union outlets named Diale Investments in the Greater Brooklyn, New York Area.  The defendant **UADIALE** concealed from both money service businesses that he operated as a dual agent.  During the period May 2008 through September 2008, Western Union senders reported that seven (7) money transfers totaling $9,985 paid at Diale Investments were induced by fraudulent mass marketing activity. Western Union suspended **UADIALE's** authority to process Western Union money transfers during September 2008 due to Anti Money Laundering compliance issues.   In or about this same time, the defendant **UADIALE** recruited an unindicted co-conspirator Newark, NJ area agent trading as IV Beauty Supply and RM & E to process fraud induced money transfers on behalf of **UADIALE** and unidentified mass marketers**.**   During the period May 2008 through January 2009, MoneyGram senders reported that 111 money transfers totaling $327,207 paid at Diale Investments were induced by fraudulent mass marketing activity.   In or about January 2009, MoneyGram terminated **UADIALE's** contract to process MoneyGram money transfers due, in part, to **UADIALE's** apparent complicity in mass marketing fraud and money laundering activity.

18. In or about September 2008, an unindicted co-conspirator applied for a MoneyGram agency agreement in the name Planet Multiservices, Brooklyn, NY. During the period November 2008 through March 2009, MoneyGram senders reported that 35 money transfers totaling $101,947 paid at Planet Multiservices were induced by fraudulent mass marketing activity.  In or about March 2009, MoneyGram terminated the unindicted co-conspirator's contract to process MoneyGram money transfers due, in part, to Planet Multiservices' apparent complicity in mass marketing fraud and money laundering activity.

19. In or about June 2008, the defendant **PRINCE EDOSA**, then a MoneyGram agent and the reported co-owner of A & M Communications with **SUSAN OSAGIEDE**, applied for and was awarded a MoneyGram agency agreement in the name **Kingsley Orji** trading as Kings Multiservices.  During the period July 29, 2008 through February 23, 2009, 84 money transfers, totaling $254,371, processed at Kings Multiservices were reported by the senders as fraud induced.

20. In or about October 2008, **ITOHAN AGHO - ALLEN** caused the submission of a MoneyGram application for agency agreement in the name of her sister, purportedly trading as Dez Multi Service.  The application was denied.  **AGHO – ALLEN** then recruited her sister-in-law and the father of **AGHO – ALLEN's** children to apply as co-owners of Dez.  MoneyGram awarded an agency agreement in the name Dez Multi Service, but terminated same within four (4) months due its apparent complicity in consumer fraud activity.  During January and February 2009, sixteen (16) money transfers, totaling $56,625, processed at Dez Multi Service were reported by the senders as fraud induced.

21. During the period June 2008 through March 2009, 243 MoneyGram money transfers totaling $773,477, processed at A & M Communications were reported by the senders as fraud induced.  MoneyGram terminated the A & M Communications' agency agreement on or about May 14, 2009 due to **SUSAN OSAGIEDE** and **PRINCE EDOSA's** apparent complicity in consumer fraud and money laundering activity.

22. During the period June 2007 through March 2009, 58 MoneyGram money transfers totaling $154,641 processed at Star Multiservices were reported by the senders as fraud induced.  MoneyGram terminated the Star Multiservices agency agreement due to its apparent complicity in consumer fraud and money laundering activity.

23. During the period July 2007 through March 2009, 362 money transfers, totaling $1,277,391, processed at Miracle Multi Link (**ITOHAN AGHO – ALLEN**) were reported by the senders as fraud induced. On or about May 8, 2009, MoneyGram terminated the Miracle Multi Link agency agreement due to **AGHO – ALLEN's** apparent complicity in consumer fraud and money laundering activity.

24. In or about December 2009, **ITOHAN AGHO – ALLEN**, identifying herself as **ITOHAN ALLEN**, the owner of Miracle Multi Link, South Ozone Park, NY, applied for and was awarded a Western Union agency agreement. Pursuant to the application process, the defendant **AGHO – ALLEN** falsely reported to Western Union that the defendant had never been terminated by a Money Service Business. Western Union Compliance Analysts determined that the consumer biographical data entered at Miracle Multi Link was suspect, and that three (3) of Miracle Multi Link's forty-five (45) August and September 2010 transactions were reported as fraud induced. Western Union further determined that ten (10) additional transactions processed during that same time period appeared fraud induced. Western Union terminated the Miracle Multi Link agreement during November 2010.

25. During the period August 2003 through August 2010, Western Union and MoneyGram money transfer senders reported that 2,279 money transfers, totaling $6,760,970 processed by the agent locations owned by the defendants and unindicted co-conspirators named herein were fraud induced. It is well established that only a fraction of the senders of fraud induced money transfers report their victimization to Western Union and MoneyGram. Accordingly, it is conservatively estimated that the dollar value of the fraud induced money transfers processed by the defendants exceeded $20 million.

## B. The Conspiracy and Its Objects

26. Beginning in approximately 2002, and continuing through approximately November 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and various co-conspirators, both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree together and with each other, to commit various offenses against the United States; that is:

    a)   To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises through the use of the United States mail and private couriers, in violation of Title 18, United States Code, Section 1341, Mail Fraud, and;

    b)   To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire, radio and television communication in interstate and foreign commerce, any writings, signals, pictures and sounds in violation of Title 18, United States Code, Section 1343, Wire Fraud.

    c)   To conduct a financial transaction affecting interstate commerce and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, with the intent to promote the carrying on of that specified unlawful

activity, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting the financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18 U.S.C. Section 1956, Laundering of Monetary Instruments, and Section 1957, Engaging in Unlawful Monetary Transactions.

## C. Manner and Means of the Conspiracy and Scheme and Artifice to Defraud

27. It was part of the conspiracy and scheme and artifice to defraud that the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and various co-conspirators, both known and unknown to the Grand Jury, agreed to obtain money and property; to wit, in excess of $20 million from thousands of victims through a scheme in which the co-conspirator mass marketers falsely promised lucrative financial awards and other items of value. It was also part of the conspiracy and scheme and artifice to defraud that the victims were told that in order to receive the cash prizes, compensation, loans or various other financial awards they were required to make advance payments, which the co-conspirators characterized as "taxes", "Customs' duties", "insurance", "security deposits" or "processing fees" dependent on the nature of the underlying scheme. It was also part of the conspiracy and scheme and artifice to defraud that in some instances the co-conspirators delivered counterfeit checks payable to the victims to fund the advance payments. The co-conspirators directed the victims to cash the checks and wire the cash proceeds via Western Union and MoneyGram to fictitious name payees. The mass marketers falsely represented to the victims that the Western Union and MoneyGram payees were bona-fide representatives of a business enterprise or

governmental agency dependent on the nature of the underlying scheme. The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and other co-conspirator Western Union and MoneyGram Agents, known and unknown to the Grand Jury, permitted the unindicted co-conspirator mass marketers to cash money transfers in multiple fictitious names, and simultaneously entered false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional data-bases.    In so doing, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and the co-conspirators concealed the true identity of the co-conspirator mass marketers, and eventual ownership and control of the fraudulent proceeds.    After the victims completed the Western Union and MoneyGram money transfers, the co-conspirators failed to distribute any of the promised cash prizes, compensation, loans, financial awards or products, and failed to refund the purported pre-paid "taxes", "Customs' duties", "processing fees", "collateral payments", "security deposits" and "insurance premiums".   The counterfeit checks deposited and cashed by the victims were returned unpaid, and the victims were responsible to reimburse the banks or entities which cashed the checks.  In order to effect this conspiracy and scheme and artifice to defraud, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and the various co-conspirators, both known and unknown to the grand jury, aided and abetted each other and with the knowledge and consent of all of the parties, engaged in the following fraudulent conduct:

a) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and others, converted the fraud induced Western Union and MoneyGram money transfers to a combination of cash, money orders, checks, bank wires and money transfers.

b) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and other co-conspirators distributed the fraud proceeds in a manner which concealed the true control and ownership of those proceeds.

c) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE** processed, or caused to be processed, the fraud induced Western Union and MoneyGram money transfers without the presence of a true Western Union or MoneyGram payee at the agent locations.

d) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE** processed, or caused to be processed, numerous Western Union and MoneyGram money transfers payable to multiple fictitious name payees on behalf of individual co-conspirators thereby not only maintaining the anonymity of the co-conspirators, but also evading the reporting requirements of the Bank Secrecy Act.

e) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE** entered, or caused to be entered, false addresses, telephone numbers and identification document serial numbers into the Western Union and MoneyGram transactional data-bases incident to these transactions thereby maintaining the anonymity of the true cash recipient, and creating the illusion that a bona-fide payee physically entered the outlet. Furthermore, any sender or payee data reported to the Treasury Department by MoneyGram and Western Union for the suspicious transactions processed by the complicit agents was false.

f) The defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE** did not complete Western Union and MoneyGram "To Receive Money" and "Receive" forms, or endorse Western Union and MoneyGram receipts and checks issued incident to the fraud induced transactions.

## D. Overt Acts

28. On about June 6, 2006, at the request of **SUSAN OSAGIEDE**, an unindicted co-conspirator co-applied for a Western Union agency agreement with **PRINCE EDOSA** in the name Gosa Multiservices. **PRINCE EDOSA** falsely identified himself as **Kingsley Orji** on the Western Union application and agreement.

29. On or about February 28, 2007, an unindicted co-conspirator Montreal MoneyGram agent trading as Empech Global issued a $2,100 (Cdn) check to **CHUKWUEMEKA NWAKANMA.**

30. On or about March 2, 2007, an unindicted co-conspirator East Orange, New Jersey MoneyGram agent trading as Abbey One Stop issued a $19,404 check payable to the defendant **CHRISTIAN EJIOFOR**.   During the period October 2006 through February 2010, the unindicted co-conspirator trading as Abbey One Stop and Abbey Multiservice processed 376 reported fraud induced MoneyGram and Western Union money transfers totaling $994,159.

31. On or about March 5, 2007, an unindicted co-conspirator East Orange, New Jersey MoneyGram agent trading as Abbey One Stop sent a $20,316.78 bank wire, the proceeds of fraud induced MoneyGram money transfers, to an unindicted co-conspirator Montreal MoneyGram agent trading as Empech Global.

32. On or about March 6, 2007, an unindicted co-conspirator Montreal MoneyGram agent trading as Empech Global issued a $7,392 (Cdn) check to **CHIKELOS EJIKEME**.

33. In or about April 2007, the defendant **SUSAN OSAGIEDE** recommended to a MoneyGram Territory Manager that MoneyGram award an agency agreement to **ITOHAN AGHO – ALLEN**.

34. On or about April 6, 2007, **ITOHAN AGHO - ALLEN**, identifying herself as the 100% owner of Miracle Multi Link, 5010 Avenue D, Brooklyn, applied for a MoneyGram agency agreement.

35. On or about May 7, 2007, an unindicted co-conspirator East Orange, New Jersey MoneyGram agent trading as Abbey One Stop sent a $49,992.32 bank wire, the proceeds of fraud induced MoneyGram money transfers, to an unindicted co-conspirator Montreal MoneyGram agent trading as Empech Global.

36. On or about May 11, 2007, an unindicted co-conspirator Montreal MoneyGram agent trading as Empech Global issued a $10,430 (Cdn) check to **CHRISTIAN OKONKWO**.

37. On or about June 22, 2007, an unindicted co-conspirator agent trading as AZ Communications issued a $15,000 check payable to Gosa Multiservices **(PRINCE EDOSA aka Kingsley Orji)**. During the period April 2007 through July 2007, AZ Communications processed 70 reported fraud induced MoneyGram and Western Union money transfers totaling $216,017.

38. On or about July 25, 2007, via the United States mails, J. B. received a fraudulent prize notification along with a check to help pre-pay taxes and processing fees necessary to collect J. B.'s cash prize.

39. On or about July 25, 2007, J. B. sent a $2,980 Western Union money transfer from Hazleton, PA as directed by a purported sweepstakes official.

40. On or about July 25, 2007, J.B.'s $2,980 Western Union money transfer was processed at Star Multiservices in Brooklyn, NY.

41. On or about August 30, 2007, an unindicted co-conspirator agent trading as Moni Communication Center issued a $4,070 check payable to the unindicted co-conspirator agent trading as Star Multiservices. During the period August 2007 through January 2008, Moni Communication Center processed 63 reported fraud induced MoneyGram and Western Union money transfers totaling $177,736.

42. On or about September 20, 2007, via the United States mails, S. M. received a fraudulent prize notification.

43. On or about September 28, 2007, S. M. sent a $2,985 Western Union money transfer payable to Stephanie Wallace from Hummelstown, PA as directed by a purported sweepstakes official.

44. On or about September 29, 2007, S. M.'s $2,985 Western Union money transfer was processed at Gosa Multiservices (**PRINCE EDOSA aka Kingsley Orji**) in Brooklyn, NY.

45. On or about November 8, 2007, an unindicted co-conspirator East Orange, New Jersey MoneyGram agent trading as Abbey One Stop sent a $1,975 money transfer payable to **CHIKELOS EJIKEME** from the proceeds of mass marketing fraud activity.

46. On or about November 8, 2007, **CHIKELOS EJIKEME and IKEJIANI OKOLOUBU**, in Montreal, Quebec, converted the $1,975 money transfer referenced above to cash.

47. On or about November 19, 2007, First Cone, Montreal, Quebec, (**IKEJIANI OKOLOUBU**) processed a  $3,225 MoneyGram money transfer payable to Judith Mckenzie from C.C., a Shrewsbury, PA victim of a mass marketing fraud scheme.

48. On or about November 19, 2007, **IKEJIANI OKOLOUBU** issued the MoneyGram money transfer check associated with the C.C. to Judith Mckenzie money transfer payable to Ikejiani Transport, not Judith Mckenzie as directed by C.C. and MoneyGram.

49. On or about December 6, 2007, an unindicted co-conspirator sent a $1,780 MoneyGram money transfer payable to **CHRISTIAN OKONKWO** in Canada from Star Multiservices, Brooklyn, NY.

50. On or about December 6, 2007, **CHRISTIAN OKONKWO and IKEJIANI OKOLOUBU**, in Montreal, Quebec, converted the $1,780 money transfer referenced above to cash.

51. On or about January 15, 2008, **IKEJIANI OKOLOUBU** deposited nine (9) MoneyGram money transfer checks totaling $15,690.66 (Cdn) to a bank account in the name Ikejiani Transport.

52. On or about January 15, 2008, **IKEJIANI OKOLOUBU** issued a $13,000 (Cdn) check drawn on the Ikejiani Transport account payable to **CHRISTIAN OKONKWO.**

53. On or about January 16, 2008, the defendant **IKEJIANI OKOLOUBU**, as Ikejiani Transport, received a $9,444.15 (Cdn) bank wire transfer from an unindicted co-conspirator money service business agent in Philadelphia trading as Primetime Business Solution LLC.

54. On or about March 11, 2008,   First Cone, Montreal, Quebec, (**IKEJIANI OKOLOUBU**) processed a  $1,900 MoneyGram money transfer payable to Louis Pereno from B.M., a Bloomsburg, PA victim of a mass marketing fraud scheme.

55. On or about March 11, 2008, **IKEJIANI OKOLOUBU** issued the MoneyGram money transfer check associated with the B.M. to Louis Pereno money transfer payable to Ikejiani Transport, not Louis Pereno as directed by B.M. and MoneyGram.

56. On or about March 11, 2008, **ELVIS UADIALE**, representing himself as the 100% owner of Diale Investments, applied for a MoneyGram Master Trust Agreement.

57. On or about April 10, 2008, **ELVIS UADIALE**, representing himself as the 100% owner of Diale Investments, signed a Western Union North America Agency Agreement.

58. On or about May 2, 2008, **ITOHAN AGHO-ALLEN** sent a $3,500 MoneyGram money transfer payable to **CHRISTIAN OKONKWO** in Canada from Miracle Multi Link, Brooklyn, NY.

59. On or about May 6, 2008, **SUSAN OSAGIEDE** issued and mailed a $20,000 A & M Communications check payable to Ikejiani Transport (**IKEJIANI OKOLOUBU**).

60. On or about May 20, 2008, via the United States mails, Y. T. received a fraudulent prize notification.

61. On or about May 29, 2008, **SUSAN OSAGIEDE** issued and mailed a $20,000 A & M Communications check payable to **CHRISTIAN OKONKWO**.

62. On or about May 29, 2008, K.F., a resident of Cumberland County, Pennsylvania negotiated the on-line purchase of a purported pure bred English Bull Dog puppy.

63. On or about May 29, 2008, an unidentified co-conspirator mass marketer directed K.F. to send a $1,000 MoneyGram money transfer payable to Lombard Brown as an advance payment for the delivery of the puppy.

64. On or about May 29, 2008, from Mechanicsburg, PA, K.F. wired a $1,000 MoneyGram money transfer payable to Lombard Brown.  The $1,000 MoneyGram money transfer was processed electronically at Diale Investments, **(ELVIS UADIALE)** Brooklyn, NY.  The address and identification data entered for the purported payee, Lombard Brown, at Diale Investments were invalid.

65. On or about July 25, 2008, at HSBC Bank, **ITOHAN AGHO-ALLEN** completed a $5,000 counter withdrawal from the Miracle Multi Link account to purchase a $5,000 Official Check payable to **CHRISTIAN OKONKWO**.

66. On or about July 29, 2008, an unindicted co-conspirator Newark, New Jersey MoneyGram and Western Union agent trading as Ken Izo Enterprise LLC purchased a $7,000 cashier's check payable to the defendant **CHRISTIAN OKONKWO**. Ken Izo processed 150 reported fraud induced MoneyGram and Western Union money transfers totaling $435,973.

67. On or about September 1, 2008, via the United States mail in Monroe County, Pennsylvania, T.D. received an offer to become a "Secret Shopper". The offer was accompanied by a check payable to T.D.

68. On or about September 4, 2008, as directed by an unidentified telemarketer, T.D. negotiated the check and withdrew $2,400 cash to enable T.D. to send a $2,300 MoneyGram money transfer payable to Tom Jenkins.

69. On or about September 4, 2008, from Mount Pocono, PA, T.D. wired a $2,300 MoneyGram money transfer payable to Tom Jenkins. The $2,300 MoneyGram money transfer was processed electronically at Diale Investments, Brooklyn, NY. The address and identification data entered for the purported payee, Tom Jenkins, at Diale Investments were invalid.

70. On or about September 15, 2008, an unindicted co-conspirator Newark, New Jersey Western Union agent trading as RM & E issued a $5,213 check payable to the defendant **CHRISTIAN EJIOFOR**. The unindicted co-conspirator trading as RM & E and IV Beauty processed 311 reported fraud induced MoneyGram and Western Union money transfers totaling $842,584.

71. On or about September 23, 2008, the defendant **CHRISTIAN EJIOFOR** sent a $20,000 bank wire to Canada payable to the unindicted co-conspirator trading as Empech Global.

72. On or about October 10, 2008, via the United States mail, J. H. received a letter accompanied by a check. The letter offered J. H. employment as a "Secret Shopper".

73. On or about October 15, 2008, as directed, J. H. sent a $1,588 MoneyGram money transfer payable to Andrea Johnson from East Stroudsburg, PA.

74. On or about October 15, 2008, J. H.'s $1,588 MoneyGram money transfer was processed at Kings Multiservices (**PRINCE EDOSA aka Kingsley Orji**) in Brooklyn, NY.

75. On or about October 16, 2008, P. B. sent a $7,000 MoneyGram money transfer payable to David Norris from York, PA to purchase an automobile offered for sale on-line.

76. On or about October 17, 2008, P. B.'s $7,000 MoneyGram money transfer was processed at Miracle Multi Link (**ITOHAN AGHO – ALLEN**) in Brooklyn, New York.

77. On or about October 23, 2008, **PRINCE EDOSA aka Kingsley Orji** issued and mailed a $15,000 Gosa/Kings Multiservices check payable to Ikejiani Transport (**OKOLOUBU**).

78. On or about November 20, 2008, via the United States mail, N. R., received a letter accompanied by a check.  The letter offered N.R. employment as a "Secret Shopper".

79. On or about November 25, 2008, as directed, N. R. sent a $2,220 MoneyGram money transfer payable to Katherine Williams from Montoursville, PA.

80. On November 25, 2008, N.R.'s $2,220 MoneyGram money transfer was processed at Miracle Multi Link (**ITOHAN AGHO-ALLEN)** in Brooklyn, NY.

81. On or about December 23, 2008, **PRINCE EDOSA aka Kingsley Orji** issued and mailed a $20,105 Gosa/Kings Multiservices check payable to **CHRISTIAN OKONKWO**.

82. On or about January 31, 2009, A. R. sent two MoneyGram money transfers, one in the amount of $2,450 payable to Harry Puller, and one in the amount of $2,150 payable to Joseph Henley from York, PA to purchase an automobile offered for sale on-line.

83. On or about January 31, 2009, A. R.'s $2,450 and $2,150 MoneyGram money transfers were processed at A & M Communications (**PRINCE EDOSA** and **SUSAN OSAGIEDE**) in Brooklyn, New York.

84. On or about October 5, 2009, at the request of **ITOHAN AGHO–ALLEN**, an unindicted co-conspirator Newark, New Jersey Western Union agent processed fraud induced money transfers, and used the proceeds to send a $5,500 Western Union money transfer to Nigeria. At **AGHO – ALLEN's** direction, the unindicted co-conspirator agent entered false data into the Western Union computer to conceal the source, control and ownership of the fraud proceeds.

85. On or about December 23, 2009, **ITOHAN AGHO – ALLEN**, as **ITOHAN ALLEN**, a purported New Jersey resident, signed a Western Union agency agreement trading as Miracle Multi Link, South Ozone Park, New York. **AGHO – ALLEN** falsely represented to Western Union that no money service business had ever terminated an agency agreement with **AGHO – ALLEN** or Miracle Multi Link.

In violation of Title 18, United States Code, Section 371, Conspiracy to Commit Section 1341 (Mail Fraud), Section 1343 (Wire Fraud),  Sections 1956 and 1957 (Laundering of Monetary Transactions)

## COUNTS 2 - 5
## (Mail Fraud)

The Grand Jury Further Charges:

1.      The information and allegations set forth in Count 1 of this Superseding Indictment are specifically incorporated herein.

2.      Between 2002 and November 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE**, and other conspirators, known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, did devise a scheme or artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1 of this Indictment, and for the purpose of executing such scheme or artifice, on or about the dates set forth below, did cause any matter or thing whatever to be deposited in the U.S. Mail and delivered according to the direction thereon, as described below:

| Count | Date | City, State | Receiver | Content |
|-------|------|-------------|----------|---------|
| 2 | 7/25/2007 | Hazleton, PA | J. B. | Prize Notification |
| 3 | 9/20/2007 | Hummelstown, PA | S. M. | Prize Notification |
| 4 | 5/20/2008 | York, PA | Y. T. | Prize Notification |
| 5 | 11/20/2008 | Duboistown, PA | N. R. | Secret Shopper Offer |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 6-26
## (Wire Fraud)

The Grand Jury Further Charges:

1.      The information and allegations set forth in Counts 1 through 5 of this Superseding Indictment are specifically incorporated herein.

2.      Between 2002 and November, 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** and other conspirators, known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury, did devise a scheme or artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, as described in Count 1 of this Indictment, and, on or about the dates set forth below, did cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writing, sign, signal, picture or sound for the purpose of executing such scheme or artifice, as described below:

| Count | Date | Sender | Send Location | Amount | Payee | Outlet | State |
|-------|------|--------|---------------|--------|-------|--------|-------|
| 6 | 03/15/2007 | L. T. | EAST STROUDSBURG, PA | $3,400 | MARK SNYDER | ABBEY ONE STOP | NJ |
| 7 | 04/26/2007 | C. R. | MILL HALL, PA | $2,860 | MARTIN LEWIS | GOSA LINKS | NY |
| 8 | 04/30/2007 | P. G. | YORK, PA | $2,800 | HAROLD PAIGE | GOSA LINKS | NY |
| 9 | 05/07/2007 | C. R. | MONTOURSVILLE | $5,880 | MARTIN LEWIS | ABBEY ONE STOP | NJ |

| 10 | 06/21/2007 | L. A. | BLOOMSBURG, PA | $3,100 | ALEX CORTEZ | STAR MS | NY |
| 11 | 07/25/2007 | J. B. | HAZLETON, PA | $2,890 | LINDA BEBMON | STAR MS | NY |
| 12 | 07/27/2007 | J. B. | HAZLETON, PA | $1,000 | LINDA BOBMON | STAR MS | NY |
| 13 | 09/28/2007 | S. M. | HUMMELSTOWN, PA | $2,985 | STEPHANIE WALLACE | GOSA MS | NY |
| 14 | 11/19/2007 | C.C. | SHREWSBURY, PA | $3,225 | JUDITH MCKENZIE | FIRST CONE | QC |
| 15 | 3/11/2008 | B.M. | BLOOMSBURG, PA | $1,900 | LOUIS PERENO | FIRST CONE | QC |
| 16 | 05/29/2008 | K.F. | MECHANICSBURG | $1,000 | LAMBARD BROWN | DIALE INV. | NY |
| 17 | 05/30/2008 | Y. T. | YORK, PA | $3,600 | CINDY JOHNSON | STAR MS | NY |
| 18 | 09/04/2008 | T.D. | MOUNT POCONO, PA | $2,300 | TOM JENKINS | DIALE INV. | NY |
| 19 | 10/15/2008 | J. H. | E STROUDSBURG, PA | $1,588 | ANDREA  JOHNSON | KINGS MS | NY |
| 20 | 10/16/2008 | P. B. | YORK, PA | $7,000 | DAVID   NORRIS | MIRACLE | NY |
| 21 | 10/24/2008 | L. M. | CARLISLE, PA | $805 | BERYL MORGAN | DIALE INV. | NY |
| 22 | 10/27/2008 | L. F. | LEBANON, PA | $2,000 | BRENDA WITT | STAR MS | NY |
| 23 | 11/06/2008 | J.B. | WILES BARRE, PA | $3,000 | GRAIGH CARTER | PLANET MS | NY |
| 24 | 11/25/2008 | N. R. | MONTOURSVILLE, PA | $2,220 | KATHERINE  WILLIAMS | MIRACLE | NY |
| 25 | 1/30/2009 | A. R. | YORK, PA | $2,450 | HARRY PULLER | A & M COMM. | NY |
| 26 | 1/30/2009 | A. R. | YORK, PA | $2,150 | JOESPH HENLEY | A & M COMM. | NY |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 27 through 62
### (Laundering of Monetary Instruments)

The Grand Jury Further Charges That:

1.  The allegations contained within Counts 1 through 26 of this Superseding Indictment are incorporated in Counts 27 through 62 as if fully set forth herein.

2.  During the period 2002 through November 2010, within the Middle District of Pennsylvania and elsewhere, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE**, and others both known and unknown to the Grand Jury, aided and abetted by each other and by others known and unknown to the Grand Jury did knowingly and willfully conduct  financial transactions affecting interstate commerce and foreign commerce, which involved the proceeds of specified unlawful activity, to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, with the intent to promote the carrying on of that specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting the financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, as set forth below:

| Count | On or About | Financial Transaction | | |
|---|---|---|---|---|
| | | Amount | From | To |
| 27 | 03/06/2007 | $7,392 (Cdn) Check | EMPECH GLOBAL HSBC BANK, MONTREAL, QUEBEC | CHIKELOS EJIKEME |
| 28 | 03/07/2007 | $2,275.05 (Cdn) MoneyGram Money Transfer Check | ABBEY ONE STOP (EJIOFOR) - EMPECH GLOBAL | CHIKELOS EJIKEME |
| 29 | 03/08/2007 | $2,570 Western Union Money Transfer | GOSA MULTISERVICES (EDOSA/Orji) | CHUKWUEMEKA NWAKANMA |
| 30 | 03/15/2007 | $2,399 MoneyGram Money Transfer | ABBEY ONE STOP (EJIOFOR) | EMPECH GLOBAL |
| 31 | 04/26/2007 | $2,860 MoneyGram Money Transfer Check | C. R. MILL HALL, PA through GOSA LINKS | GOSA MULTI-SERVICES. |
| 32 | 04/30/2007 | $2,800 MoneyGram Money Transfer Check | P.G. YORK, PA through GOSA LINKS | GOSA MULTI-SERVICES |
| 33 | 05/04/2007 | $2,570 MoneyGram Money Transfer | IV BEAUTY (EJIOFOR) | FIRST CONE (OKOLOUBU) |
| 34 | 05/11/2007 | $10,430 (Cdn) Check | EMPECH GLOBAL HSBC BANK, MONTREAL, QUEBEC | CHRISTIAN OKONKWO |
| 35 | 6/20/2007 | $2,969.96 (Cdn) MoneyGram Money Transfer Check | ABBEY ONE STOP (EJIOFOR) - FIRST CONE | CHIKELOS EJIKEME |
| 36 | 09/14/2007 | $1,300 Western Union Money Transfer | GOSA MULTISERVICES (EDOSA/Orji) | CHUKWUEMEKA NWAKANMA |
| 37 | 11/8/2007 | $1,975 MoneyGram Money Transfer | ABBEY ONE STOP, (EJIOFOR) E. ORANGE, NJ | CHIKELOS EJIKEME, FIRST CONE, QUEBEC |
| 38 | 11/19/2007 | $3,225 MoneyGram Money Transfer | C.C. SHREWSBURY, PA | FIRST CONE/ IKEJIANI TRANSPORT INC |

| 39 | 11/20/2007 | $1,875 Western Union Money Transfer | GOSA MULTISERVICES (EDOSA/Orji) | CHUKWUEMEKA NWAKANMA |
|----|------------|------|------|------|
| 40 | 12/06/2007 | $1,780 MoneyGram Money Transfer | STAR MULTISERVICES BROOKLYN, NY | CHRISTIAN OKONKWO FIRST CONE, QUEBEC |
| 41 | 01/15/2008 | $15,690.66 MoneyGram MTCs Deposit | MONEYGRAM AGENT FIRST CONE (OKOLOUBU) | IKEJIANI TRANSPORT (OKOLOUBU) |
| 42 | 01/15/2008 | $13,000 (Cdn) Check | IKEJIANI TRANSPORT, CIBC BANK, MONTREAL, QUEBEC | CHRISTIAN OKONKWO |
| 43 | 01/16/2008 | $9,444.15 (Cdn) Bank Wire Transfer | PRIMETIME BUSINESS SOLUTION LLC | IKEJIANI TRANSPORT (OKOLOUBU) |
| 44 | 03/11/2008 | $1,900 MoneyGram Money Transfer | B.M. BLOOMSBURG, PA | FIRST CONE/ IKEJIANI TRANSPORT INC |
| 45 | 05/02/2008 | $3,500 MoneyGram Money Transfer | MIRACLE MULTI LINK (AGHO-ALLEN), BROOKLYN, NY | CHRISTIAN OKONKWO, QUEBEC |
| 46 | 05/03/2008 | $3,500 MoneyGram Money Transfer | STAR MULTISERVICES BROOKLYN, NY | CHRISTIAN OKONKWO, QUEBEC |
| 47 | 05/07/2008 | $4,265 MoneyGram Money Transfer | MIRACLE MULTI LINK (AGHO-ALLEN), BROOKLYN, NY | IKEJIANI OKOLOUBU, QUEBEC |
| 48 | 5/8/2008 | $10,000 Bank Wire | A & M COMMUNICATIONS (OSAGIEDE), BROOKLYN, NY | FIRST CONE TELECOMMUNICATION (OKOLOUBU), QUEBEC |
| 49 | 07/09/2008 | $2,000 Western Union Money Transfer | STAR MULTISERVICES BROOKLYN, NY | IKEJIANI OKOLOUBU, QUEBEC |

| 50 | 07/14/2008 | $930.80 MoneyGram Money Transfer | STAR MULTISERVICES (AGHO), BROOKLYN, NY | IKEJIANI OKOLOUBU, FIRST CONE, QUEBEC |
| --- | --- | --- | --- | --- |
| 51 | 07/25/2008 | $5,000 HSBC Official Check | MIRACLE MULTI LINK (AGHO-ALLEN) HSBC ACCOUNT | CHRISTIAN OKONKWO |
| 52 | 8/28/2008 | $10,000 Check | A & M COMMUNICATIONS (OSAGIEDE), BROOKLYN, NY | CHRISTIAN OKONKWO, QUEBEC |
| 53 | 10/02/2008 | $1,881 Western Union Money Transfer | CHRISTIAN EJIOFOR | CHRISTIAN NWOSU |
| 54 | 10/07/2008 | $2,690 MoneyGram Money Transfer | CROSSWORLD WIRELESS | CHUKWUEMEKA NWAKANMA, QUEBEC |
| 55 | 10/17/2008 | $10,000 Check | GOSA/KINGS MULTISERVICES (EDOSA/ORJI), BROOKLYN, NY | IKEJIANI TRANSPORT (OKOLOUBU), QUEBEC |
| 56 | 11/26/2008 | $9,636.09 MONEYGRAM ACH BANK TRANSFER | MONEYGRAM, MINNEAPOLIS, MINNESOTA | MIRACLE MULTI LINK (AGHO-ALLEN) ACCOUNT NUMBER 661-74797-2 AT HSBC BANK |
| 57 | 12/01/2008 | $10,000 On Line Bank Transfer | DIALE INVESTMENTS (UADIALE) BOA ACCOUNT NUMBER 483009708179 | ELVIS UADIALE BOA SAVINGS ACCOUNT NUMBER 483011064500 |
| 58 | 12/1/2008 | $8,000 Cash Withdrawal | ELVIS UADIALE BOA SAVINGS ACCOUNT NUMBER 483011064500 | ELVIS UADIALE |

| 59 | 12/05/2008 | $1,906   MoneyGram Money Transfer | PLANET MULTISERVICES BROOKLYN, NY | IKEJIANI OKOLOUBU, NIGERIA |
| 60 | 12/09/2008 | $10,000 Check | KINGS MULTISERVICES (EDOSA/ORJI), BROOKLYN, NY | CHRISTIAN OKONKWO, QUEBEC |
| 61 | 03/13/2009 | $2,350   Western Union   Money Transfer | RM & E CHRISTIAN EJIOFOR | PREYE FUYOBODE |
| 62 | 5/27/2009 | $4,250 Check | CHRISTIAN NWOSU, TD BANK | CHUKWUEMEKA NWAKANMA, QUEBEC |

All in violation of Title 18 U.S.C. Section 1956(a)(1)(A)(i), Section 1956(a)(1)(B), and Section 1956(a)(2).

## COUNTS 63 through 78
### (Engaging in Unlawful Monetary Transactions)

## The Grand Jury Further Charges:

1.   The allegations contained within Counts 1 through 62 of this Superseding Indictment are incorporated in Counts 63 through 78 as if fully set forth herein.

2.   Between 2002 and November 2010, in the Middle District of Pennsylvania and elsewhere, the defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE** did, knowing engage in monetary transactions in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity; to wit, Mail Fraud in violation of 18 U.S.C. Section 1341, and Wire Fraud in violation of 18 U.S.C. Section 1343, as described in Counts 1 through 62 of this Indictment, as set forth below:

| Count | On or About | Monetary Transaction | Amount |
|-------|-------------|----------------------|--------|
| 63 | 03/02/2007 | ABBEY ONE STOP CHECK PAYABLE TO CHRISTIAN EJIOFOR | $19,404 |
| 64 | 05/01/2007 | MONEYGRAM ACH TRANSFER TO GOSA LINKS (OSAGIEDE,EDOSA) ACCOUNT NUMBER 661-747441 AT HSBC BANK | $11,060 |
| 65 | 05/06/2008 | A & M COMMUNICATIONS (OSAGIEDE), NEW YORK  CHECK PAYABLE/DEPOSITED TO IKEJIANI TRANSPORT INC, QUEBEC | $20.000 |

| 66 | 05/19/2008 | A & M COMMUNICATIONS (OSAGIEDE), NEW YORK  BANK WIRE PAYABLE/DEPOSITED TO IKEJIANI TRANSPORT INC, QUEBEC | $19,884.99 |
|---|---|---|---|
| 67 | 05/29/2008 | A & M COMMUNICATIONS (OSAGIEDE), NEW YORK CHECK PAYABLE/DEPOSITED TO CHRISTIAN OKONKWO, QUEBEC | $20,000 |
| 68 | 06/25/2008 | A & M COMMUNICATIONS (OSAGIEDE), NEW YORK CHECK PAYABLE/DEPOSITED TO CHRISTIAN OKONKWO, QUEBEC | $20,000 |
| 69 | 07/03/2008 | A & M COMMUNICATIONS (OSAGIEDE), NEW YORK CHECK PAYABLE/DEPOSITED TO CHRISTIAN OKONKWO, QUEBEC | $31,635 |
| 70 | 08/22/2008 | MIRACLE MULTI LINK (AGHO-ALLEN) HSBC ACCOUNT NUMBER 661-74797-2 BANK WIRE TO METRO TEXTILES CORNER LTD, LONDON, ENGLAND | $30,000 |
| 71 | 09/08/2008 | MONEYGRAM ACH DEPOSIT TO DIALE INVESTMENTS (UADIALE) ACCOUNT NUMBER 483009708179 AT BANK OF AMERICA | $14,430 |
| 72 | 09/23/2008 | INTERNATIONAL BANK WIRE FROM CHRISTIAN EJIOFOR TO EMPECH GLOBAL | $20,000 |
| 73 | 10/18/2008 | CASH WITHDRAWAL FROM MIRACLE MULTI LINK ACCOUNT NUMBER 661-74797-2 AT HSBC BANK (AGHO-ALLEN) | $20,000 |
| 74 | 10/21/2008 | MONEYGRAM ACH DEPOSIT TO MIRACLE MULTI LINK (AGHO-ALLEN) ACCOUNT NUMBER 661-74797-2 AT HSBC BANK | $11,710.37 |
| 75 | 10/23/2008 | GOSA/KINGS MULTISERVICES (EDOSA/ORJI), NEW YORK CHECK PAYABLE/DEPOSITED TO IKEJIANI TRANSPORT INC, QUEBEC | $15,000 |
| 76 | 12/01/2008 | MONEYGRAM ACH DEPOSIT TO DIALE INVESTMENTS (UADIALE) ACCOUNT NUMBER 483009708179 AT BANK OF AMERICA | $49,706.96 |

| 77 | 12/19/2008 | CASH WITHDRAWAL FROM MIRACLE MULTI LINK ACCOUNT NUMBER 661-74797-2 AT HSBC BANK (AGHO-ALLEN) | $25,000 |
| 78 | 12/23/2008 | GOSA/KINGS MULTISERVICES (EDOSA/ORJI), NEW YORK CHECK PAYABLE/DEPOSITED TO CHRISTIAN OKONKWO, QUEBEC | $20,105 |

All in violation of Title 18, United States Code, Section 1957(a).

## COUNT 79 Criminal Forfeiture
## Title 18 U. S. C. Section 982(a)(1)

Pursuant to Title 18, United States code, Section 982(a)(1), the United States gives notice to the Defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** that  upon conviction for Laundering of Monetary Instruments, Title 18 U.S.C. Section 1956(a)(1)(A)(i), Section 1956(a)(1)(B), and Section 1956(a)(2), as charged in Counts 27 through 62 of this Indictment, or upon conviction of Engaging in Unlawful Monetary Transactions, Title 18, United States Code, Section 1957(a) as charged in counts 63 through 78 of this Indictment, all property, real and personal, involved in the violations, and all property traceable to such property, shall be forfeited to the United States; to wit, approximately $6,760,970 in United States Dollars, or a money judgment equal to that amount.

## COUNT 80 Criminal Forfeiture
## Title 18 U. S. C. Section 982(a)(2)

Pursuant to Title 18, United States Code, Section 982(a)(2), the United States gives notice to the Defendants **ITOHAN AGHO-ALLEN, PRINCE EDOSA, CHIKELOS EJIKEME, CHRISTIAN EJIOFOR, CHUKWUEMEKA NWAKANMA, IKEJIANI OKOLOUBU, CHRISTIAN OKONKWO, SUSAN OSAGIEDE and ELVIS UADIALE,** that  upon conviction for Mail Fraud, Title 18, United States Code, Section 1341, as charged in Counts 2 through 5 of this Indictment, or upon conviction of Wire Fraud, Title 18, United States Code, Section 1343 as charged in Counts 6 through 26 of this Indictment, all property constituting, or derived from, proceeds the person obtained, directly or indirectly, as the result of said violation shall be forfeited to the United States; to wit, approximately $6,760,970 in United States Dollars, or a money judgment equal to that amount.

**Notice Regarding Substitute Assets**

In the event that any property subject to forfeiture in Count 79 or 80 of this Superseding Indictment, as a result of any act or omission of the defendants:

    a.  cannot be located upon exercise of due diligence;

    b.  has been placed beyond jurisdiction of the Court;

    c.  has been transferred or sold to, or deposited with a third party;

    d.  has been substantially diminished in value; or

    e.  has been comingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendants up to the value of such property, pursuant to Title 18, United States Code, Section 982(b)(1), and Title 21, United States Code, Section 853(p).



_Peter J. Smith_

PETER J. SMITH  by c af
United States Attorney

Dated: _2-29-2012_